# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
SUSAN K. GAUVEY
U.S. MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_skgchambers@mdd.uscourts.gov
(410) 962-4953
(410) 962-2985 - Fax

January 15, 2013

Anthony R Mignini, Esq.
Mignini, Raab & Demuth, LLP
429 S. Main Street
Bel Air, MD 21014

Alex S Gordon, Esq.
Assistant United States Attorney
36 S Charles St Fourth Fl
Baltimore, MD 21201

Re:  Tina Marie Pulling v. Michael J. Astrue, Commissioner,
     Social Security, Case No. SKG-11-1622

Dear Counsel,

Claimant, Tina Marie Pulling, by her attorney, Anthony R.

Mignini, filed this action pursuant to 42 U.S.C. § 405(g)

seeking judicial review of the final decision of the

Commissioner of the Social Security Administration ("the

Commissioner"), who denied her claim for Supplemental Security

Income ("SSI").

Currently pending before the Court are cross motions for

summary judgment, and plaintiff's request for remand in the

alternative.  For the reasons that follow, the Court hereby

DENIES plaintiff's Motion for Summary Judgment, DENIES

defendant's motion for summary judgment, and REMANDS the final decision of the Commissioner.

## I.   **Procedural History**

Ms. Pulling filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on September 18, 2008, alleging that disability began on June 21, 2001.  (R. 18).  Ms. Pulling's claims were denied at the initial and reconsideration levels.  (Id.).  Thereafter Ms. Pulling had an administrative hearing on June 14, 2010.  (Id.).  At the hearing, Mr. Pulling amended her alleged onset disability to September 18, 2009, thus withdrawing her claim for claim for Disability Insurance Benefits.[1]  (Id.).  As a result, the Administrative Law Judge ("ALJ") considered only Ms. Pulling's application for SSI.  (Id.).  On July 27, 2010 the ALJ denied Ms. Pulling's claim, and on August 30, 2010, Ms. Pulling requested the Appeals Council review the ALJ's decision.  (R. 27).  The Appeals Council denied Ms. Pulling's request for review on May 12, 2011, making the ALJ's opinion the final decision of the agency.  (R. 1).  Ms. Pulling filed this action, on January 17, 2012 seeking review of that final decision pursuant to 42 U.S.C. § 405(g).

## II.  **Factual Background**

---

[1] The date of last insured is June 30, 2001.

The Court has reviewed the Commissioner's Statement of Facts and, finding that it accurately represents the record, hereby adopts it.  (ECF No. 20-1, 2-8)

### III. <u>ALJ Findings</u>

In reviewing a claimant's eligibility for SSI, an ALJ must consider all of the evidence in the record and follow the sequential five-step analysis set forth in the regulations to determine whether the claimant is disabled as defined by the Act.  20 C.F.R § 416.920(a).[2]  If the agency can make a disability determination at any point in the sequential analysis, it does not review the claim further.  20 C.F.R. § 404.1520(a)(4).  After proceeding through each of the required steps, the ALJ in this case concluded that Ms. Pulling was not disabled as defined by the Act.  (R. 27).

The first step requires the claimant to prove that he or she is not engaged in "substantial gainful activity."[3]  20 C.F.R. § 416.920(a)(4)(i).  If the ALJ finds that the claimant is

---

[2] Disability is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A).
[3] Substantial gainful activity is defined as "work activity that is both substantial and gainful."  20 C.F.R. § 416.972.  Work activity is substantial if it involves doing significant physical or mental activities and even if it is part time or if plaintiff is doing less, being paid less, or has fewer responsibilities than when she worked before.  20 C.F.R. § 416.972(b).  Substantial gainful activity does not include activities such as household tasks, taking care of oneself, social programs, or therapy.  20 C.F.R. § 416.972(c).

engaged in "substantial gainful activity," he or she will not be considered disabled.  Id.  Here, the ALJ found that Ms. Pulling "has not engaged in substantial gainful activity since September 18, 2009, the amended alleged onset date."  (R. 20).

At the second step, the ALJ must determine whether the claimant has a severe, medically determinable impairment or a combination of impairments that limit her ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c); see also 20 C.F.R. §§ 404.1521, 416.921.  In addition, there is a durational requirement that the claimant's impairment last or be expected to last for at least 12 months.  20 C.F.R. § 416.909.

Here, the ALJ found that Ms. Pulling's "degenerative disc disease of the lumbrosacral spine, asthma, obesity (5' 11" and 250 lbs.), depression, anxiety (possible post traumatic stress disorder), and polysubstance abuse (crack cocaine, marijuana, alcohol)" were severe, medically determinable impairments.  (R. 20).  The ALJ also determined that Ms. Pulling's gastroesophageal reflux disease is non-severe because there is "no treatment or significant symptoms recorded after mid-2008." Id.  Regarding Ms. Pulling's sleep apnea, the ALJ determined the condition was "not established to be a medically determinable impairment" due to the inexistence of a sleep study and a lack of diagnosis in the record.  Id.

4

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or equal an impairment enumerated in the "Listing of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii).  If one of the Listings is met, disability will be found without consideration of age, education, or work experience.  20 C.F.R. § § 404.1520(d), 416.920(d).  The ALJ here reviewed sections 1.04 (disorders of the spine), 3.03 (asthma), 12.04 (affective disorder), 12.08 (personality disorder), and 12.09 (substance abuse disorder) of the Listing of Impairments and determined that plaintiff did not meet any of the listings.  (R. 21).  To meet listing 12.04, the claimant must satisfy either <u>both</u> "paragraph A" and "paragraph B;" or "paragraph C" alone.  20 C.F.R. § 404, Subpart P, Appendix 1. To meet 12.08 the claimant must satisfy both "paragraph A" and "paragraph B."  The "paragraph B" criteria in Listing 12.04 and 12.08 are the same.[4]   <u>Id.</u>

To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following four criteria: marked[5] restriction of activities of daily living; or marked difficulties in maintaining social functioning; or marked

---

[4] Listing 12.09 (substance abuse disorder) is satisfied by meeting criteria in other Listings.  For example, under Listing 12.09, depressive syndrome is evaluated under Listing 12.04, and personality disorders are evaluated under Listing 12.08.  <u>Id.</u>
[5] A marked limitation means more than moderate but less than extreme.  20 C.F.R. § 404, Subpart P, Appendix 1.

difficulties in maintaining concentration, persistence, or pace;
or repeated episodes of decompensation, each of extended
duration.[6]  20 C.F.R. § 404, Subpart P, Appendix 1.

The ALJ found that Ms. Pulling did not meet the "paragraph
B" criteria because Ms. Pulling's mental impairments do not
cause at least two "marked" limitations or one "marked"
limitation and repeated episodes of decompensation, each of
extended duration.  (R. 21).  The ALJ also found that Ms.
Pulling did not meet the "paragraph C" criteria.  (Id.).
Specifically, in activities of daily living, the ALJ found that
Ms. Pulling has only a mild restriction.  (Id.).  The ALJ based
this upon hearing testimony and the claimant's statements to her
consultative psychiatric examiner.  (Id.).  The evidence
indicated to the ALJ that Ms. Pulling was capable of many
activities of daily living around her home such as cooking,
cleaning, and doing laundry.  (Id.).  Furthermore, Ms. Pulling
cared for her boyfriend and son, participated in activities with
her friends, left her house for church, left her house 4 times a
week,[7] and regularly drove.  (Id.).

---

[6] Repeated episodes of decompensation, each of extended duration, means three
episodes within 1 year, or an average of once every 4 months, each lasting
for at least 2 weeks.  20 C.F.R. § 404, Subpart P, Appendix 1.

[7] Exhibit 7E states plaintiff drives a car "4 out of 7 days" for "short periods
of time."  The ALJ stated that plaintiff drives 4 to 7 times a week, citing
7E.  (R. 23).  This inconsistency, as recognized by the Commissioner, is
explained by Exhibit 4E (Tr. 194), which the ALJ did not explicitly mention.
In November 2008 (Exhibit 4E), plaintiff stated she goes outside almost every
day, when she goes outside she drives a car, and when going outside she can
go out alone.  (Tr. 194).

In areas of social functioning, the ALJ determined that Ms. Pulling has moderate difficulty: while it was difficult to get along with people in her past employment, she interacts normally with medical examiners and her own family. (Id.). With regard to the third criterion, the ALJ found Ms. Pulling has moderate difficulties. (Id.). The ALJ relied on Dr. Vaidya's report that Ms. Pulling's memory was intact, and relied on Ms. Pulling's testimony that she had problems focusing and concentrating. (Id.). With regard to the final criterion, the ALJ found that Ms. Pulling has experienced one to two episodes. (Id.). The ALJ did not provide an in-depth analysis of Listing 1.04 (disorders of the spine), or Listing 3.03 (asthma).

Before an ALJ advances to the fourth step of the sequential analysis, she must assess the claimant's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. Social Security Ruling (SSR) 96-8p. The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining a claimant's RFC, ALJs evaluate the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. Craig v. Chater, 76 F.3d 585, 594 (4th Cir.

7

1996); 20 C.F.R. § 404.1529.  First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms.  20 C.F.R. § 404.1529(b).  Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work.  20 C.F.R. § 404.1529(c)(1).  At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant.  20 C.F.R. § 404.1529(c).  The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence.  SSR 96-7p. To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments he has received for his symptoms, medications, and any other factors contributing to functional limitations.  Id.

Here, the ALJ determined that Ms. Pulling has the following residual functional capacity: Ms. Pulling can perform sedentary work as defined in 20 C.F.R. 416.967(a), except that she can occasionally climb ramps and stairs (but never ladders, ropes or scaffolds), balance, stoop, kneel, crouch and crawl.  (R. 22). Additionally, she can understand, carry out and remember simple instructions in 2 hour increments; interact occasionally with

supervisors, coworkers, and the general public; and adapt to simple changes in a routine work setting. (Id.). Applying the two-step test for evaluating subjective symptoms, the ALJ found that "[Ms. Pulling's] medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that "[Ms. Pulling's] statements concerning the intensity, persistence and limiting effects of [those] symptoms are not entirely credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (R. 23).

At the fourth step of the sequential analysis, the ALJ must consider whether the claimant retains the RFC necessary to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ noted that Ms. Pulling's previous work as a waitress/bar tender, receptionist, and van driver either required "light or greater exertional requirements or was semi skilled." (R. 25). Thus, the ALJ found that Ms. Pulling is unable to perform her past relevant work. (Id.).

Where, as here, the claimant is unable to resume her past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. This step requires consideration of whether, in light of vocational factors such as age, education, work experience, and RFC, the claimant is capable of other work in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). At this step, the burden of proof shifts to the agency to

establish that the claimant retains the RFC to engage in an alternative job which exists in the national economy.  McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The agency must prove both the claimant's capacity to perform the job and that the job is available.  Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983).  Before the agency may conclude that the claimant can perform alternative skilled or semi-skilled work, it must show that she possesses skills that are transferable to those alternative positions or that no such transferable skills are necessary.  McLain, 715 F.2d at 869.

In this case, the ALJ found that although Ms. Pulling was unable to perform any past relevant work, based on Ms. Pulling's age, education, work experience, and RFC, Ms. Pulling could perform jobs which exist in significant numbers in the national economy.  (R. 25-26).  Based on the testimony of the vocational expert, the ALJ determined that Ms. Pulling could work in occupations such as assembler (60,000 jobs nationally and 900 jobs locally); packer (40,000 jobs nationally and 800 jobs locally); and inspector (40,000 jobs nationally and 500 jobs locally).  (R. 26).  Thus, the ALJ concluded that Ms. Pulling had not been under a disability, as defined in the Act, from the alleged onset date of September 18, 2008 through the date of denial of disability services.  (R. 26-27).

## IV.  <u>Standard of Review</u>

The function of this Court on review is to leave the findings of fact to the agency and to determine upon the whole record whether the agency's decision is supported by substantial evidence, not to try Ms. Pulling's claim de novo.  <u>King v. Califano</u>, 599 F.2d 597, 598 (4th Cir. 1979).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if the ALJ employed the proper legal standards.  42 U.S.C. §§ 405(g), 1383(c)(3); <u>Craig</u>, 76 F.3d at 589; <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987).  Substantial evidence "consists of more than a scintilla of evidence but may be somewhat less than a preponderance."  <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966).  It is "such relevant evidence as a reasonable mind might accept to support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (internal quotations omitted).

In reviewing the decision, this Court will not reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  <u>Craig</u>, 76 F.3d at 589; <u>Hayes v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).  The Commissioner, as fact finder, is responsible for resolving conflicts in the evidence.  <u>Snyder v. Ribicoff</u>, 307 F.2d 518, 520 (4th Cir. 1962).  If the Commissioner's findings

11

are supported by substantial evidence, this Court is bound to accept them.  <u>Underwood v. Ribicoff</u>, 298 F.2d 850 (4th Cir. 1962).

Despite deference to the Commissioner's findings of fact, "a factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." <u>Coffman</u>, 829 F.2d at 517.  The Court has authority under 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the agency "with or without remanding the case for a rehearing." <u>Melkoyan v. Sullivan</u>, 501 U.S. 89, 98 (1991).

## V.   <u>Discussion</u>

On appeal, Ms. Pulling asserts that the ALJ erred in denying her claim for SSI for three reasons: (1) the ALJ failed to properly evaluate plaintiff's Asthma under Listing 3.03; (2) the ALJ failed to give appropriate weight to the opinion of Sarah Jones, a certified physician assistant; and (3) the ALJ failed to properly evaluate plaintiff's Physical RFC.  (ECF No. 16-1, 3-12).

### A. The ALJ Properly Evaluated Plaintiff's Asthma under Listing 3.03.

The plaintiff argues that the ALJ erred by failing to explain her reasoning as to why plaintiff's asthma did not meet Listing 3.03.  (ECF No. 16-1, 14-16); (ECF No. 21-1, 1-5).

Plaintiff cites <u>Clifton v. Chater</u>, as persuasive evidence that the ALJ is required to discuss the listing requirements in detail.  79 F.3d 1007, 1009 (10th Cir. 1996) (case remanded where the ALJ did not identify the relevant Listing or Listings, but "merely stated in a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment.").  The Commissioner responds that while plaintiff's asthma was a severe impairment, it neither met nor equaled Listing 3.03B, and furthermore that plaintiff has never alleged that her asthma actually met or equaled Listing 3.03B.  (ECF No. 20-1, 10-15).

**1. There Was Not Ample Evidence that the Claimant Met the Requirements of Listing 3.03B, Thus the ALJ Did Not Have a Duty to Compare Evidence of Claimant's Asthma to the Listing**

Listing 3.03B states that qualifying for disability with asthma requires:

> Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year.  Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.03B.  3.00C defines attacks:

> When a respiratory impairment is episodic in nature, as can occur with exacerbations of

asthma… the frequency and intensity of
episodes that occur despite prescribed
treatment are often the major criteria for
determining the level of impairment.
Documentation for these exacerbations should
include available hospital, emergency
facility and/or physician records indicating
the dates of treatment; clinical and
laboratory findings on presentation, such as
the results of spirometry and arterial blood
gas studies (ABGS); the treatment
administered; the time period required for
treatment; and the clinical response.
Attacks of asthma… as referred to in
paragraph B of 3.03… are defined as
prolonged symptomatic episodes lasting one
or more days and requiring intensive
treatment, such as intravenous
bronchodilator or antibiotic administration
or prolonged inhalational bronchodilator
therapy in a hospital, emergency room or
equivalent setting.  Hospital admissions are
defined as inpatient hospitalizations for
longer than 24 hours.  The medical evidence
must also include information documenting
adherence to a prescribed regimen of
treatment as well as a description of
physical signs.  For asthma, the medical
evidence should include spirometric results
obtained between attacks that document the
presence of baseline airflow obstruction.

20 C.F.R. PART 404, Subpart P, Appendix 1, § 3.00C.  Plaintiff

has the burden of demonstrating that her impairment either meets

or equals a listed impairment.  Sullivan v. Zebley, 493 U.S.

521, 530-31 (1990); Kellough v. Heckler, 785 F.2d 1147, 1152

(4th Cir. 1986).

Contrary to plaintiff's argument, however, Clifton rejects

the notion that an ALJ is required to discuss "every piece of

evidence."  Clifton, 79 F.3d at 1009-10.  See Haynes v.

_Barnhart_, 416 F.3d 621, 626 (7th Cir. 2005); _Howard ex rel._
_Wolff v. Barnhart_, 341 F.3d 1006, 1012 (9th Cir. 2003); _Craig v._
_Apfel_, 212 F.3d 433, 436 (8th Cir. 2000); _Lilly v. Astrue_, No.
1:08-CV-53, 2009 U.S. Dist. LEXIS 83185, at *8 (M.D.N.C. Sept.
10, 2009);   _See also_ _Richardson v. Astrue_, No. 11-4096, 2011
U.S. App. LEXIS 22799, at *15 (10th Cir. 2011) (not ordering "a
remand _solely_ for the ALJ to expressly discuss" a piece of
evidence) (emphasis added); _Wall v. Astrue_, 561 F.3d 1048, 1069
(10th Cir. 2009) (noting that the _Clifton_ court rejected the
construction that, "based on a reading of the ALJ's decision as
a whole, would lead to unwarranted remands needlessly prolonging
administrative proceedings." (quoting _Fischer-Ross v. Barnhart_,
431 F.3d 729, 730 (10th Cir. 2005))).

Indeed, as plaintiff acknowledges, (ECF No. 16-1, 15), the
ALJ's duty to compare the evidence of the claimant's impairments
to the criteria of the relevant listed impairments is only
triggered when there is _ample evidence_ in the record that
plaintiff meets or equals the requirements of the listing.
_Huntington v. Apfel_, 101 F. Supp. 2d 384, 390-92 (D. Md. 2000)
(ALJ did not have duty to compare evidence in record to criteria
of relevant Listings because there was not ample evidence in
record to support a determination that plaintiff met or equaled
any of Listings); _Ketcher v. Apfel_, 68 F. Supp. 2d 629, 645-46
(D. Md. 1999) ("Neither the Social Security law nor logic

commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment.") (citing <u>Cook v. Heckler</u>, 783 F.2d 1168, 1172–73 (4th Cir. 1986)). <u>See</u> <u>also</u> <u>Russell v. Chater</u>, 1995 U.S. App. LEXIS 17254, at *7 (4th Cir. July 7, 1995).

To illustrate, in <u>Gowans v. Astrue</u>, the medical evidence in the record did not support a disability under Listing 5.05 or 5.08. No. 06-2817, 2008 U.S. Dist. LEXIS 3643 (D. Md. 2008). The plaintiff could not meet either Listing by factual or medical support, thus, the ALJ's evaluation was "sufficient and appropriate and the evidence was not such to compel a criterion-by-criterion analysis of Listings 5.05 and 5.08." <u>Id.</u> at *32. In <u>Huntington v. Apfel</u>, there was "no factual or medical support for much of Listing 1.05C, thus the ALJ was not required to compare the medical evidence of record" to the criteria of the Listing.  101 F. Supp. 2d at 392.

In this case, the ALJ identified the relevant listing in the header, but did not complete an explicit analysis by comparing Listing 3.03B to plaintiff's situation.  However, this was not in error as the medical evidence in the record does not provide significant support for a disability under the Listing. First, the record reflects plaintiff did not meet the requirements for an asthma "attack."  Under 3.03B, attacks of

16

asthma are those that require "intensive treatment such as intravenous bronchodilator or antibiotic administration or prolonged inhalation bronchodilator therapy in a hospital, emergency room or equivalent setting." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.03B.  Nothing in the record shows that plaintiff required any sort of "intensive treatment."  On the contrary, the physician from plaintiff's March 8, 2010 hospital visit opined that she probably has "mild asthma."  (R. 24); (Tr. 459).  Second, attacks must occur "at least once every 2 months or at least six times a year."  Using the mandatory evaluation period of at least 12 consecutive months, plaintiff did not meet this requirement.  20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.03B.  At most, the record documents that plaintiff was treated for asthma four times between November 2009 and April 2010 (November 2009, January 2010, February 2010, and April 2010).[8]  (See Tr. 439–43, 444–48, 449–53, 456–69).  In addition, medical evidence indicating asthma "should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction."  20 C.F.R. PART 404, Subpart P, Appendix 1, § 3.00C.  Nothing in the record shows that plaintiff completed these –or similar– tests.

---

[8] In the other three instances plaintiff alleges she was treated for asthma (June 2009, March 2010, July 2010), the treating physician either does not mention asthma or states that plaintiff was not having an asthma attack. (See Tr. 434–37, 457–60, 499).

Furthermore, as defendant notes, there is no evidence in the record that could demonstrate the attacks occurred "in spite of prescribed treatment."  20 C.F.R. Part 404, Subpart P, Appendix 1, § 3.03B; see also 20 C.F.R. Part 404 Subpart P, Appendix 1 § 3.00C (stating that the "medical evidence must also include information documenting adherence to a prescribed regimen of treatment").  On the contrary, plaintiff's medical records indicate that she did not adhere to the prescribed treatment.  Her continual use of cocaine, marijuana, and cigarettes, were all against medical advice.  (R. 24); (Tr. 459) (counseling regarding quitting smoking and using illicit drugs on March 08, 2010); (Tr. 506) (plaintiff using illicit drugs, receives counseling regarding quitting smoking on March 24, 2010); (Tr. 468, 469) (plaintiff received instructions to quit smoking on April 03, 2010); (Tr. 489) (plaintiff using illicit drugs, receives counseling to quit smoking on May 03, 2010).

The Court finds that there was not ample evidence presented by plaintiff to require that the ALJ conduct a point by point comparison of Listing 3.03B to plaintiff's asthma symptoms. Thus, similar to Gowans and Huntington, the ALJ's evaluation was sufficient and appropriate.

**B. The ALJ did not Properly Evaluate the Opinion of Sarah Jones, P.A.**

Plaintiff next argues that the ALJ failed to give appropriate weight to the opinion of Sarah Jones, P.A., and that because the ALJ did not discuss or follow 20 C.F.R. § 416.913(d), and SSR 06-03p, 2006 LEXIS 5, the ruling is reversible error. (ECF No. 16-1, 16–18); (ECF No. 21-1, 5–7). The Commissioner responds that the ALJ properly evaluated Ms. Jones' opinion, and that the ALJ correctly recognized that Ms. Jones is not an "acceptable medical source" as defined in the regulations.[9]  (ECF No. 20-1, 15–18).

Acceptable medical sources in this context include licensed physicians, licensed or certified psychologists, licensed podiatrists, and qualified speech-language pathologists.  20 C.F.R. § 404.1513(a).  Nurse practitioners, physician's assistants, naturopaths, chiropractors, audiologists and therapists are considered non-medical "other" sources.  20 C.F.R. § 404.1513(d).  The distinction is important because certain functions are reserved for acceptable medical sources. An ALJ may only use an acceptable medical source to establish the existence of a medically determinable impairment.  SSR 06-03p.  Only an acceptable medical source may give medical opinions.  Id.  Finally, only an acceptable medical source may be considered a treating source and entitled to controlling weight.  Id.

---

[9] Plaintiff does not dispute that Ms. Jones is not an "acceptable medical source."

Social Security Ruling SSR 06-03p provides guidance regarding weighing the authority of both medical and non-medical "other" opinions.  The ruling notes that "other" medical sources, while not afforded the same authority as acceptable medical sources, may "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  Id.  Indeed, SSR 06-03p notes that these sources have "assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," and as such "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  Id.  The Ruling also notes that "other" medical sources may be important as supplemental information that supports or contradicts an accepted medical opinion. Id.

While adjudicators are encouraged to make use of "other" medical evidence, courts generally do not require that ALJ's discuss or given weight to all "other" medical sources before them. In Pascoe v. Astrue, the court found that the ALJ did not err in assigning no weight to a nurse practitioner, noting that such sources "*may* be used to evaluate the severity of a claimant's impairment and how such impairments impact the claimant's ability to work."  No. 1:11-CV-226, 2012 U.S. Dist. LEXIS 114178, at *12 (W.D.N.C. July 22, 2012)(emphasis in

original).  Similarly, in Thompson v. Astrue, the court found
that "[t]he agency *may* choose to use evidence from other sources
to evaluate the severity of a claimant's impairments and how
those impairments affect the claimant's ability to work, *but it
is not required to do so.*" No. 11-942, 2012 U.S. Dist. LEXIS
66247, at *4 (D. Md. May 11, 2012) (emphasis added); see also
Adkins v. Astrue, 3:10-cv-01114, 2011 U.S. Dist. LEXIS 97508, at
*36 (S.D. W. Va. Aug. 30, 2011) ("other source" opinions "'may'
be considered be considered in making a determination of a
claimant's disability status, but are not entitled to
significant or controlling weight.") citing 20 C.F.R. §
416.913(d).

    At least one court has held, however, that "other" medical
sources may not be dismissed entirely solely on the basis that
they are not acceptable medical sources. In Adkins v. Astrue,
the court remanded in part because the ALJ's reasoning "failed
to recognize" that the opinion of a P.A., an "other source"
medical provider, may be used to show the severity of claimant's
"impairments, and how they affect his ability to work."  10-887,
2012 U.S. Dist. LEXIS 16721, *8-9 (D. Md. Feb. 10, 2012). The
court noted that an opinion from a non-acceptable medical source
may, depending on the facts of the case, outweigh the opinion of
an acceptable medical source.  Id.

Finally, there is no strict requirement that an ALJ
explicitly explain the weight given to the source. SSR 06-03p
provides:

> [T]he adjudicator *generally should explain* the weight
> given to opinions from these "other sources," *or*
> *otherwise ensure that the discussion of the evidence*
> *in the determination or decision allows a claimant or*
> *subsequent reviewer to follow the adjudicator's*
> *reasoning*, when such opinions may have an effect on
> the outcome of the case.

Id. at *15-16 (emphasis added).  As such, so long as the
discussion of evidence allows this Court to follow the ALJ's
reasoning, SSR 06-03p does not require an ALJ to explain the
evidentiary weight assigned to the other source opinion.
Ledbetter v. Astrue, No. 8:10-CV-00195-JDA, 2011 U.S. Dist.
LEXIS 38351, at *25 (D.S.C. Apr. 7, 2011) (remanded where the
ALJ did not explain the weight given to the "other source" *and*
failed to provide a discussion of the evidence that allowed the
Court to follow the ALJ's reasoning); Johnson v. Astrue, 2010
U.S. Dist. LEXIS 142043, at *8-9 (D.S.C. Nov. 16, 2010)
(recognizing that the ALJ provided a discussion of the evidence
that allowed the court to follow the ALJ's reasoning).

Plaintiff argues here that the ALJ "summarized the [sic]
Ms. Jones's findings and then stated that no weight would be
given to the opinion because she was not a medical source."
(ECF No. 21-1, 6).  Because the "guidelines of SSR 06-3p were

never mentioned nor taken into consideration in the ALJ's RFC analysis," plaintiff asks that the case be remanded.  Id. at 5. In reply, defendant does not directly address plaintiff's argument as to SSR 06-3p, instead citing extensively to the record to demonstrate that Ms. Jones' opinion is not well-supported or consistent with other evidence of record.  (ECF No. 20-1, 16-17).  Specifically, defendant argues that Ms. Jones' diagnosis of sleep apnea, and her analysis of Ms. Pulling's breathing difficulties, are not supported by the evidence on record.  Id.  As such, defendant argues that "substantial evidence supports the ALJ's decision to discount Ms. Jones' opinion."  Id.

The ALJ's treatment of Ms. Jones's opinion is undoubtedly bare and borders on cursory.  The ALJ briefly discussed Ms. Jones's RFC, and reviewed Ms. Jones's opinion that claimant is not capable of low stress jobs.  (R. 25).  The ALJ then states that "Ms. Jones's opinion is not given weight as a medical source opinion because she is not an acceptable medical source under 20 CFR 416.913(a)."  (Id.).  The opinion goes on to note that "moreover, she did not address the claimant's serious and ongoing substance abuse problem."  This is the extent of the analysis.  (Id.).

Nowhere does the ALJ explicitly state, however, as plaintiff argues, that no weight was given to Ms. Jones's

opinion.  The opinion merely notes that the opinion is not given weight as a medical source.  The confusion is understandable, however, because the ALJ does not indicate how much weight, if any, was granted to Ms. Jones's opinion as an "other" medical source.  While under no obligation to explicitly state the weight given to an "other" medical source, as noted supra, an ALJ at a minimum must "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning when such opinions may have an effect on the outcome of the case." SSR 06-03p.

The Court finds that the ALJ's analysis of Ms. Jones's RFC does not provide sufficient clarity for the claimant or this Court to follow her reasoning.  The ALJ devotes only one sentence to an analysis of the Ms. Jones's opinion.  One comment regarding a failure to address drug usage is insufficient to allow the Court or claimant to understand why Ms. Jones's RFC was given little or no weight by the ALJ.

Further, while Ms. Jones did not directly address plaintiff's drug usage in her RFC, the record indicates she knew of plaintiff's drug usage as a result of previous examinations. (R. 506).  Thus, while not directly addressed, the record indicates that Ms. Jones made her RFC determinations well aware of plaintiff's drug abuse problem.  In addition, it is unclear

why a failure to address drug dependency would have any effect
on Ms. Jones's analysis of plaintiff's back pain.  Although
some—but not all—medical reports relied upon by the ALJ mention
marijuana and cocaine use in conjunction with an analysis of
plaintiff's asthma and shortness of breath, (R.454-60), there is
no support in the record for a relationship between drug use and
back pain.  As such, it is unclear why a failure to address drug
use has any bearing on Ms. Jones's opinion regarding plaintiff's
symptoms of pain and its effect on her ability to function.

The ALJ's reasoning here is further muddied by the fact
that not all of the accepted medical sources cited in the
opinion mention plaintiff's drug use.  Neither of the two
reports from Dr. Dalal, who examined plaintiff for back pain on
two occasions, mention plaintiff's drug use. (R. 278-80; 461-
62).  As such, the ALJ gives no explanation as to why Ms.
Jones's opinion is given little to no weight, while Dr. Dalal's
opinions are given substantial authority.  Without a more full
explanation, claimant and this Court (and indeed defendant, who
scours the record for additional evidence supporting the ALJ's
analysis of Ms. Jones) are left to speculate.

While defendant notes a series of reasons why Ms. Jones's
opinion should have been given limited weight, it is neither his
task nor the Court's to supply the basis for the ALJ's
conclusion:  "regardless whether there is enough evidence in the

record to support the ALJ's decision, principles of
administrative law require the ALJ to rationally articulate the
grounds for her decision." Steele v. Barnhart, 290 F.3d 936
(7th Cir. 2002); Ledbetter v. Astrue, 8:10-CV-00195, 2011 U.S.
Dist. LEXIS 38351 (D.S.C. 2011).  The ALJ, and not defendant's
lawyers, must "build an accurate and logical bridge from the
evidence to her conclusion." Id.

The Court's analysis does not, however, end here.  SSR 06-
3p only requires that the ALJ's reasoning be clear as to "other"
medical source opinions "when such opinions may have an effect
on the outcome of the case."  The Court finds that Ms. Jones's
opinion could potentially affect the outcome of the case.  The
opinion, given after three separate examinations of plaintiff,
contradicts in many aspects the medical opinions upon which the
ALJ relies to inform her RFC.  It is a more recent opinion and
stands in contrast to medical reports from Dr. Dalal two years
earlier.  Ms. Jones's RFC has the potential to undercut the
opinions of an acceptable medical source, and therefore may
change the outcome of the case.  Accordingly, and particularly
in light of SSR 06-03p recognition of the growing importance of
PA's in medical treatment, the ALJ is directed on remand to
provide a more full description of her reasoning as to Ms.
Jones's RFC.

**C. The ALJ Improperly Evaluated Ms. Pulling's Physical RFC**

Last, plaintiff challenges the ALJ's evaluation of plaintiff's *physical* RFC assessment as a whole.[10]  In support, plaintiff alleges that there is virtually no rationale for the physical RFC assessment and advances two specific arguments: (1) that there were no specific findings regarding plaintiff's ability to lift, stand and walk, and perform postural activities, and (2) that contrary to SSR 96-8p, the ALJ failed to identify the maximum amount of each work-related activity that plaintiff could perform.  (ECF No. 16-1, 18-19); (ECF No. 21-1, 7-8).  In response, the Commissioner argues that the allegations are without merit, as the ALJ expressly found that plaintiff could perform sedentary work, except that she could only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.  The Commissioner also asserts that the ALJ summarized and analyzed the evidence in proper narrative form.  (ECF No. 20-1, 18-20).

RFC is a measurement of the most a claimant can do despite his or her limitations.  See 20 C.F.R. § 404.1545(a).  According to the SSA,

> RFC is an assessment of an individual's ability to do
> sustained work-related physical and mental activities
> in a work setting on a regular and continuing basis.

---

[10] Plaintiff does not challenge the mental RFC assessment.

A "regular and continuing basis" means 8 hours a day,
for 5 days a week, or an equivalent work schedule.

SSR 96-8p, 1996 SSR LEXIS 5.  Under SSR 96-8p, the ALJ is
required to "identify the individual's functional limitations or
restrictions and assess his or her work-related abilities on a
function-by-function basis" and "[o]nly after that may RFC be
expressed in terms of the exertional levels of work, sedentary,
light, medium, heavy, and very heavy."  SSR 96-8p.  SSR 96-8p
requires an ALJ to provide a narrative discussion of claimant's
symptoms and limitations and related medical source opinions to
satisfy SSR 96-8p. See Fleming, 284 F. Supp. 2d at 271 (An RFC
assessment must "include a narrative discussion describing how
the evidence supports each conclusion, citing specific medical
facts and non-medical evidence.").

Courts do not generally mandate that an ALJ perform a
"true" function by function analysis: a narrative description
detailing claimant's functionality and medical opinions is
sufficient.  See Mills v. Astrue, 2012 U.S. Dist. LEXIS 80695,
43-44 (N.D. W. Va. Apr. 9, 2012)(a "true function-by-function
analysis" is unnecessary: a narrative discussion of claimant's
symptoms is sufficient under SSR 96-8); Knox v. Astrue, 327 Fed.
Appx. 652, 657 (7th Cir. 2009)("Although the 'RFC assessment is
a function-by-function assessment,' SSR 96-8p, the expression of
a claimant's RFC need not be articulated function-by-function; a

narrative discussion of a claimant's symptoms and medical source

opinions is sufficient."). An ALJ's narrative must "fully and

logically explains the evidence which is consistent with the

ALJ's [RFC] determination," to comply with 96-8p.[11] Moore v.

Astrue, 2011 U.S. Dist. LEXIS 15791 (D. Md. Feb. 17, 2011).

While courts have not read RFC requirements strictly, at a

minimum, the ALJ has an obligation to use their narrative

discussion to connect the evidence discussed to plaintiff's

limitations. Even if a narrative includes a discussion of

medical and non-medical evidence and the relative weights given

to each, there must be some explanation of "how the evidence

presented applies to the specific limitations in the plaintiff's

RFC." Jones v. Astrue, No. SKG-09-1683, 2011 U.S. Dist. LEXIS

133371 at *36 (D. Md. Nov. 18, 2011). A broad finding that the

evidence as a whole supports the proposed RFC is insufficient.

Id. (finding insufficient the ALJ's "unsupported assertion"

that, based on the entire record, the evidence limits claimant

to the proposed RFC). The ALJ must make some connection between

---

[11] A conclusion in the RFC that claimant can perform a specific range of work—for example, "light," or, as here, "sedentary," can carry implicit findings regarding claimants ability to perform work-related activities. Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). In Robinson v. Astrue, plaintiff complained, as here, that the ALJ did not perform a function by function analysis of claimants abilities. The court disagreed, finding that the ALJ's "limitation to light work implicitly includes a finding that the plaintiff could stand or walk off and on for a total of approximately six hours of an eight-hour workday and a finding that the plaintiff could occasionally perform the postural activities of climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling." 2011 U.S. Dist. LEXIS 112037 at *18-22 (D.S.C. Feb. 18, 2011).

the evidence cited and the plaintiff's capabilities. Hood v. Astrue, No. SKG-08-2240, 2009 U.S. Dist. LEXIS 115979, 2009 WL 4944838, *11 (D. Md. December 14, 2009)(remanding because where "the ALJ 'makes no connection between the evidence she cited and the specific limitations she found the plaintiff to have' then the ALJ has not provided the requisite narrative" to support the RFC finding (quoting Schwemmer v. Barnhart, No. SKG-02-2205, slip. op. at 40 (Nov. 3, 2003)).

The Court finds that the ALJ did not properly connect the evidence discussed with the limitations in plaintiff's RFC. As in Jones, the ALJ did discuss several medical and non-medical sources, but the only effort to connect these findings with plaintiff's RFC was a broad statement that "[i]n summary, the above residual functional capacity assessment is consistent with the record evidence as a whole." (R. 25). While the ALJ's determination that Ms. Pulling was capable of sedentary work included implicit findings as to Ms. Pulling's specific limitations, no connection was made between the evidence discussed and these limitations. As noted supra, without a proper explanation of the ALJ's decision making process, it is impossible for the Court to determine whether or not the decision was based on substantial evidence. Jones, 2011 U.S. Dist. LEXIS 133371 at *40. This case must be remanded to the

ALJ for further explanation as to what aspects of plaintiff's medical history support the RFC assessment.

## Conclusion

For the reasons set forth above, the Court finds that the ALJ appropriately evaluated the listed impairments at step three, but failed to provide sufficient analysis regarding Ms. Jones' RFC to allow a subsequent reviewer to follow her reasoning, and also failed to adequately connect the medical and non-medical evidence on record to the specific limitations in plaintiff's RFC.  Accordingly, the Court DENIES plaintiff's motion for summary judgment (ECF No. 16-1), DENIES defendant's motion for summary judgment (ECF No. 20-1), and REMANDS the final decision of the Commissioner for further proceedings not inconsistent with this judgment.

Despite the informal nature of this letter, it shall constitute an Order of the Court, and the Clerk is directed to docket it accordingly.

Sincerely yours,

/s/

Susan K. Gauvey
United States Magistrate Judge